UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

CHANDLER BROOKS,

     Plaintiff,

v.                                                                No.  1:20-CV-049-H

TAYLOR COUNTY, TEXAS, et al.,

     Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING FARMER AND MEISER'S
SECOND MOTION TO DISMISS AND GRANTING BROOKS LEAVE TO AMEND**

     Before the Court are Randall Farmer and Stan Meiser's Second Rule 12(b)(6)

Motion to Dismiss[1] (Dkt. Nos. 30–31) and Plaintiff's Motion for Leave of Court to File His

Second Amended Complaint (Dkt. No. 60).  While the Court recognizes the gravity of

Brooks's allegations against Officers Farmer and Meiser, it concludes that Brook's First

Amended Complaint fails to adequately state claims against either officer.  Thus, the Court

dismisses Brooks's claims against the officers.[2]  However, in the interest of justice, the Court

grants Brooks leave to file his proposed Second Amended Complaint (Dkt. No. 60-1).

Although Brooks has not adequately explained his undue delay and apparent lack of

diligence, the Court finds that leave is appropriate because the proposed Second Amended

Complaint is not futile, allowing leave to amend would not unduly prejudice the officers,

and denying leave would unduly prejudice Brooks.

---

[1] Officers Farmer and Meiser filed their motion and reply in separate filings.  Dkt. Nos. 30–31; Dkt. Nos. 41–42.  Those filings are identical in substance and argument.  Accordingly, the Court will address the documents as a single filing by the officers.

[2] The Court notes that there are other officers in this case.  However, for purposes of this order, the Court will use officers to refer exclusively to Officers Farmer and Meiser.

Accordingly, the Court grants Brooks's motion for leave to amend (Dkt. No. 60) and orders the Clerk of Court to file the proposed Second Amended Complaint (Dkt. No. 60-1) into the official record in this case. The Court orders Officers Farmer and Meiser to file an answer to the Second Amended Complaint within 14 days of it being filed.

## 1.    Procedural Posture and Pertinent Factual Allegations[3]

### A.    Factual Allegations

As alleged in the First Amended Complaint, this suit is predicated on a series of events taking place on or about March 4, 2018 and continuing through March 13, 2018. Dkt. No. 28 ¶¶ 31, 186. While Brooks names a multitude of defendants in his First Amended Complaint, the Court only addresses the factual allegations against Officers Farmer and Meiser that are pertinent in deciding their second motion to dismiss.

Brooks alleges that on or around the night of March 4, 2018, he was robbed in his hotel room and hit in the head with a baseball bat leaving him unconscious and bleeding from his ear. *Id.* ¶ 31. The next morning, Abilene Police Department Officers Farmer and Meiser were dispatched to the motel in response to reports that Brooks had not left the room by the appropriate checkout time. *Id.* ¶¶ 33–34. The officers later discovered that Brooks was not the guest who had booked the room. *Id.* ¶ 39.

When the officers arrived at the motel, Brooks was lying on the bed, unconscious, with blood on the side of his head. *Id.* ¶ 34. The officers "tried repeatedly to rouse him, but Brooks was in and out of consciousness, confused, and unable to rationally respond to

---

[3] The following alleged facts are taken from Brooks's First Amended Complaint (Dkt. No. 28), which is the operative pleading in the lawsuit. *Clark v. Tarrant Cnty*, 798 F.2d 736, 740 (5th Cir. 1986) (explaining that an amended complaint entirely supersedes and takes the place of an original complaint). The Court must accept these allegations as true when resolving the motion to dismiss. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

questions" or communicate—including being unable to identify himself. *Id.* ¶¶ 35, 41. He was also unsteady and unable to walk unassisted. *Id.* ¶ 41. The officers arrested Brooks for criminal trespass and transported him to the Taylor County Jail. *Id.* ¶¶ 36, 42.

At the jail, the officers informed the jail staff that Brooks was intoxicated. *Id.* ¶ 42. Specifically, the officers told the jail staff that Brooks had taken "bad drugs" and that "it would take a few days for him to come down." *Id.* ¶ 44. Officer Farmer also indicated in his report that Brooks "acted as if he was intoxicated." *Id.* ¶ 37.

Brooks claims that his behavior—being unsteady and unable to walk unassisted or rationally communicate—was due to the obvious and apparent injuries he sustained the night before when he was hit in the head with a baseball bat, and not from intoxication. *Id.* ¶¶ 37, 40–41. He indicates that the officers "had no evidence or reason to believe that [he] had gotten ahold of some bad drugs or that he was under the influence of drugs or alcohol" and that the officers fabricated this story to explain away the serious nature of his medical distress and to delay any possible diagnosis or treatment. *Id.* ¶¶ 46, 48–55.

Ultimately, upon Brooks's release from jail eight days later, his mother took him to a local hospital, where it was determined that Brooks was suffering from a skull fracture and an epidural hemorrhage. *Id.* ¶ 186. He was also later diagnosed with a traumatic brain injury. *Id.*

### B.    Procedural Background and the Parties' Positions

Brooks filed his Original Complaint on March 5, 2020. Dkt. No. 1. On May 29, 2020, Officers Farmer and Meiser moved to dismiss the claims against them under Rule 12(b)(6) and based on qualified immunity. Dkt. No. 15. On October 21, 2020, the Court granted the motion, finding that Brooks failed to sufficiently allege that the

officers were actually aware of a substantial risk of serious harm, and therefore, that he had not plausibly asserted claims against the officers for deliberate indifference or bystander liability. Dkt. No. 22 at 8–9. The Court allowed Brooks to replead his claims against the officers and ordered Brooks to file a Rule 7(a) Reply addressing the officers' assertions of qualified immunity, in the event that he filed an amended complaint. *Id.* at 10–11.

Brooks then filed his First Amended Complaint on November 17, 2020, which again asserts claims against the officers for deliberate indifference and bystander liability. Dkt. No. 28 ¶¶ 274–80, 412–31. Brooks also filed a Rule 7(a) Reply addressing the officers' assertions of qualified immunity (Dkt. No. 29), to which the officers filed a response (Dkt. Nos. 35–36).[4]

Now pending is the officers' second motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Dkt. Nos. 30–31), a response (Dkt. Nos. 39–40), and a reply (Dkt. Nos. 41–42). In their second motion to dismiss, the officers argue that the First Amended Complaint fails to cure the defects stated in the Court's previous order, and therefore all claims against the officers should now be dismissed with prejudice. Dkt. No. 30 at 10–11. Specifically, the officers claim that the First Amended Complaint fails to allege sufficient facts to show that either of them acted deliberately indifferent to Brooks's medical needs in that they actually drew the inference that a substantial risk of serious harm existed or that they should have known of the risk because it was so obvious. *Id.* at 8–11. They also moved to dismiss based upon qualified immunity. *Id.* at 12–16.

---

[4] Farmer and Meiser filed their response to the Rule 7(a) Reply in separate filings. Dkt. Nos. 35–36. Like their duplicate motions to dismiss, those filings are identical in substance and argument. Accordingly, the Court will address them as a single filing.

4

Months after the second motion to dismiss was ripe, Brooks filed a motion asking to supplement his response and requesting leave to amend his complaint in the event that the Court grants the motion in whole or in part. Dkt. Nos. 55, 57. The Court ordered Brooks to file an amended motion that included a proposed second amended complaint as an attachment pursuant to Northern District of Texas Local Civil Rule 15.1. Dkt. No. 59. Brook then filed an amended motion for leave with a proposed Second Amended Complaint.[5] Dkt. No. 60. The officers filed a response in opposition (Dkt. No. 62). Accordingly, the motion for leave has been fully briefed.

## 2.    Legal Standards

### A.    Rule 12(b)(6) Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In resolving a motion to dismiss, the Court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)) (internal quotation marks omitted). The Court does not, however,

---

[5] Brooks indicates in the motion that the Taylor County defendants do not object to his request for leave. Dkt. No. 60 at 2, 11.

5

"accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (explaining that a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

A claim should only be dismissed if a court determines that it is beyond doubt that the claimant cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570. A motion to dismiss pursuant to Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (internal citation omitted).

### B.   Qualified Immunity

In addition to the Rule 12(b)(6) standard of dismissal, the Court must also consider the standard for asserting qualified immunity. "Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016). It shields "all but the plainly incompetent or those who knowingly violate the law." *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

"The plaintiff has the burden of establishing a constitutional violation and overcoming a [qualified immunity] defense." *Jackson v. City of Hearne*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)). The plaintiff meets this burden by pleading "specific facts that both allow the court

6

to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Conclusory allegations are insufficient to overcome the qualified-immunity defense. *Williams–Boldware v. Denton Cnty*, 741 F.3d 635, 643–44 (5th Cir. 2014) (*citing Iqbal*, 556 U.S. at 678).

To overcome the defense of qualified immunity, the plaintiff must "plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Jackson*, 959 F.3d at 200 (quoting *al-Kidd*, 563 U.S. at 735). The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). The Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks and citation omitted).

"There are two ways to demonstrate clearly established law." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). "Under the first approach, the plaintiff may identify a case or body of relevant case law in which an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *Id.* (quotation marks and citations omitted). This approach "do[es] not require a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at

7

741. Under the second approach, "there can be the rare 'obvious case,' where the

unlawfulness of the officer's conduct is sufficiently clear even though existing precedent

does not address similar circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590

(2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)); *cf. Taylor v. Riojas*, 141 S.

Ct. 52, 53–54 (2020) ("Confronted with the particularly egregious facts of this case, any

reasonable officer should have realized that [the plaintiff's] conditions of confinement

offended the Constitution.").

**3.   Analysis**

The officer defendants contend that Brooks has not pled sufficient facts to state a

plausible claim against them under 42 U.S.C. § 1983. Dkt. No. 30 at 8–12. Further, the

officers claim that Brooks has not pled sufficient facts to overcome their qualified-immunity

defenses. *Id.* at 12–18.

**A.   Brooks has not pled sufficient facts to state a claim for deliberate**
**indifference against Officers Farmer and Meiser.**

The Court first considers whether Brooks has stated a claim under Section 1983

based on deliberate indifference. "Section 1983 provides a claim against anyone who 'under

color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's

constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "To state a

section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the

Constitution or laws of the United States and (2) demonstrate that the alleged deprivation

was committed by a person acting under color of state law.'" *James v. Texas Collin Cnty.*, 535

F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th

Cir. 2000)).

The Fourteenth Amendment guarantees arrestees the right "not to have their serious medical needs met with deliberate indifference on the part of the confining [or arresting] officials."[6] *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

"To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001))."[7] "Deliberate indifference is an extremely high standard to meet." *Id.* (quoting *Domino*, 239 F.3d at 756). "[A]n official cannot be found liable 'unless he knows of and disregards an excessive risk' to [a plaintiff's] safety." *Garza*, 922 F.3d at 635 (quoting *Farmer*, 511 U.S. at 837). "Negligence or even gross negligence is not enough: the officials must have had actual knowledge of the substantial risk." *Aguirre v. City of San Antonio*, 995

---

[6] In this regard, an arrestee shares the same rights as a pretrial detainee. *See Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472–73 (5th Cir. 1996).

[7] The Fifth Circuit observed in *Dyer* that some panels have articulated "a third element—that the official 'subjectively intended that harm occur.'" *Dyer*, 964 F.3d at 380 (quoting *Garza v. City of Donna*, 922 F.3d 626, 635 & n.5 (5th Cir. 2019)); *compare DeLaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) (holding that deliberate indifference is present "only if [official] knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it" (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)), *with Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (holding that deliberate indifference also requires showing official "subjectively intended that harm occur"). The officers note this third element in their reply (*See* Dkt. No. 41 at 2), but neither party analyzes this element in their briefing. The Court need not address the third element in this case because the traditional two-part inquiry disposes of the issue. *See Dyer*, 964 F.3d at 380.

F.3d 395, 420 (5th Cir. 2021) (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996)

(en banc)). Thus, "an official's failure to alleviate a significant risk that he should have

perceived but did not" cannot amount to deliberate indifference. *Farmer*, 511 U.S. at 838.

"[E]ach defendant's subjective deliberate indifference, *vel non*, must be examined

separately." *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

Under exceptional circumstances, an "official's knowledge of a substantial risk of

harm may be inferred by the obviousness of a substantial risk." *Bias v. Woods*, 288 F. App'x

158, 162 (5th Cir. 2008) (citing *Farmer*, 511 U.S. at 842 & n.8). This exception has been

applied in cases where the severity of the risk or injury is obvious or the cause of that injury

or harm is plainly evident to the officer. *See, e.g.*, *Easter v. Powell*, 467 F.3d 459, 463–64 (5th

Cir. 2006) (holding that a prison nurse's subjective awareness was inferable where she was

aware of the detainee's heart condition and the detainee presented obvious signs of serious

cardiac health risks); *Brannan v. City of Mesquite*, No. 3:19-CV-1263-X, 2020 WL 7344125, at

*3–4, 6 (N.D. Tex. Dec. 14, 2020) (finding that plausible facts existed to show that the

substantial risk of serious harm was obvious where the arresting officer observed the arrestee

swallow what he believed to be a bag of methamphetamine and observed the arrestee's rapid

decline); *Dyer*, 964 F.3d at 377–79, 85 (finding sufficient facts for a jury to reasonably infer

subjective awareness where the officer knew the arrestee was on LSD, observed him

violently banging his head against interior of a police car over 40 times during transport, and

the arrestee had a visible and serious head injury).

Here, Brooks has not alleged sufficient facts to show that the severity of his risk was

obvious, or the cause of his injuries was plainly evident, such that subjective awareness can

plausibly be inferred. Taking plaintiff's allegations as true, the officers found Brooks

unconscious with blood on the side of his head and coming from his ear[8] and thereafter

observed Brooks being in and out of consciousness, confused, unable to rationally

communicate or identify himself, unsteady, and unable to walk unassisted. Dkt. No. 28

¶¶ 34–41. Even if these facts are sufficient to show that the officers could have plausibly

drawn an inference of substantial risk of serious harm—thereby meeting the first prong of

deliberate indifference—they are insufficient to show that either officer actually drew this

inference.

The only facts alleged that could lead to an inference about the officers' subjective

state of mind are the officers' statements that Brooks "acted as if he was intoxicated," "was

refusing to identify himself," "was on drugs and alcohol," and that he "had gotten ahold of

some bad drugs and it would take a few days for him to come down." *Id.* ¶¶ 37, 44–45.

While these facts could lead to a logical inference that the officers believed Brooks to be

intoxicated or on drugs, Brooks does not ask the Court to make such an inference. Instead,

Brooks asks the Court to take a logical leap and accept that the officers intentionally

fabricated this narrative about Brooks being under the influence of drugs or alcohol to

explain away the seriousness of his medical condition and delay his medical treatment. *See*

*id.* ¶¶ 46, 50–53; Dkt. No. 40 at 16–17. What is conspicuously absent, and necessary, for the

Court to make such a logical leap, are any non-conclusory facts showing that either officer

subjectively knew that Brooks faced a substantial risk of serious harm or needed immediate

attention. In other words, Brooks does not allege any facts showing that either officer

---

[8] In his response, Brooks indicates that officers found him with "dried blood on his face and coming from his ear." Dkt. No. 40 at 19. However, the relevant portions of the First Amended Complaint to which Brooks cites, do not specify that the blood was "dried." While this distinction may be minor, it is nonetheless notable given the limited allegations in this case about Brooks's appearance and his behavior.

actually knew Brooks was under medical distress and not under the influence of drugs or alcohol. Thus, the Court finds that Brooks's conclusory statements about the officers' subjective state of mind are insufficient to state a plausible claim for deliberate indifference.

Additionally, the Court finds that Brooks has not pled sufficient factual allegations to show that the substantial risk of serious harm in this case was so obvious such that the officers' subjective awareness can be inferred. This case is unlike *Brannan* and *Dyer*, where the officers watched the arrestees cause their own injuries and observed physical changes as a result of those injuries. Here, Brooks does not allege that the officers watched an assault take place or observed any physical signs of assault other than the dried blood on his face and ear. Thus, the Court must determine whether Brooks has alleged facts to show that the substantial risk of serious harm was obvious based solely on Brooks's appearance and his behavior during the short period he was with the officers.

First, the Court finds that Brooks's appearance alone does not support an inference that a substantial risk of serious harm was obvious. While the Court does not doubt that blood coming from one's ear can be "indicia of assault and traumatic brain injury," it can likewise be a sign of a non-serious injury. Dkt. No. 28 ¶ 41. And the fact that the blood was dried makes it less plausible that it was obvious Brooks was suffering from a serious head injury or that he needed immediate medical care. Additionally, the fact that Brooks was found unconscious does not by itself render it obvious that he had been assaulted or was suffering from a traumatic brain injury.

Additionally, even when analyzing Brooks's appearance in conjunction with his behavior, the Court finds that Brooks has not alleged sufficient facts to support a plausible inference that it was obvious that he was suffering from a substantial risk of serious harm

12

and needed immediate medical attention. Here, unlike in *Dyer* and *Brannan*, Brooks does not allege that he was suffering from a drug-induced medical emergency. In fact, Brooks rejects such a conclusion. Instead, Brooks alleges that he was demonstrating "obvious signs of assault" and indicia of traumatic brain injury. *Id.* ¶¶ 37, 41. Although Brooks has alleged some behaviors that could be consistent with assault or traumatic brain injury— being in and out of consciousness, unable to rationally communicate, and unable to walk unassisted—the Court finds that these facts do not sufficiently lead to a plausible inference that it was obvious in this case that Brooks was facing a substantial risk of serious harm or needed immediate medical attention. Thus, even when viewing the facts in the light most favorable to Brooks, the Court finds that without further factual development about Brooks's appearance or behavior, it cannot discern whether the risk of serious harm in this case was so obvious such that the officers should have known that he needed immediate medical care. Thus, while the Court does not discount the severity of the harm in this case, it finds that Brooks has failed to sufficiently allege the second prong of deliberate indifference under either theory.

### B.     Because Brooks has failed to sufficiently plead a deliberate-indifference claim against the officers, his claim for bystander liability must also fail.

Brooks's second basis for establishing liability under Section 1983 is predicated on the theory of bystander liability—that is, one officer's alleged failure to protect Brooks from another officer's violation of Brooks's constitutional rights. Dkt. No. 28 ¶¶ 412–16. This claim depends on a properly pled deliberate-indifference claim, which is not currently present. Thus, Brooks's bystander-liability claim likewise fails.

An officer may be liable under a theory of bystander liability under Section 1983 if he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a

13

reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). In resolving whether a plaintiff has sufficiently alleged a bystander-liability claim, the Court also considers whether an officer has acquiesced in the alleged constitutional violation. *Id.* (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

Here, because the Court finds that Brooks fails to sufficiently state a claim for deliberate indifference against the officers, there is no constitutional violation present to impose liability against either officer under the bystander theory. Thus, the court concludes that Brooks has not pled a plausible claim under either provision of Section 1983. Accordingly, the Court dismisses Brooks's claims against Officers Farmer and Meiser.

### C. The Court need not analyze whether Officers Farmer and Meiser are entitled to qualified immunity.

The Court's conclusion that Brooks fails to state a claim against the officers also resolves the question of qualified immunity raised in the motion to dismiss. *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 410 (5th Cir. 2009) ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

### 4. Motion for Leave to Amend the Complaint

Brooks seeks leave to file a Second Amended Complaint if the Court grants the officers' motion to dismiss in whole or in part. Dkt. No. 60. Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." However, leave to amend "is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992) (citing *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 667 (5th Cir. Unit A July 1981)). "[T]he decision to grant or deny leave to amend lies

14

within the sound discretion of the district court." *Id.* (citations omitted).

In deciding whether to grant leave to amend, the Court may consider factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Courts may also consider judicial efficiency and effective case management. *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009) (internal citations omitted). Nevertheless, Rule 15(a) and the other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome." *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *overruled on other grounds by Twombly*, 550 U.S. at 562–63); 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1471, at 587 (3d ed. 2010) (footnote omitted) (stating that a primary purpose of Rule 15 is to allow the "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities").

Here, Brooks seeks leave to amend his complaint to add information allegedly learned while gathering evidence to respond to the Taylor County defendants' motion for summary judgment.[9] Dkt. No. 60 at 3. Specifically, he seeks to add information derived

---

[9] Northern District of Texas Civil Local Rule 15.1(b) provides that a party who electronically files a motion for leave to amend must attach the proposed amended pleading as an exhibit. Brooks initially failed to include a proposed amended complaint with his motion. *See* Dkt. Nos. 55, 57. The Court in its discretion could have denied the motion on this ground alone. *See, e.g., Lefevre v. Connextions, Inc.*, No. 3:13-CV-1780-D, 2014 WL 1390861, at *2 (N.D. Tex. Apr. 10, 2014). Instead, the Court ordered Brooks to file an amended motion with his proposed amended complaint attached (Dkt. No. 59), which he did (Dkt. No. 60-1). The officers do not suggest that Brooks's initial noncompliance with Local Rule 15.1 prejudiced them in any way, so the Court will not deny his motion on this basis. *See, e.g., Maiden Biosciences, Inc. v. MPM Med., Inc.*, No. 3:18-CV-1354-D, 2019 WL 2075585, at *1 n.1 (N.D. Tex. May 10, 2019) (declining to deny leave based on the movant's

from declarations by Mary Brooks, plaintiff's mother, and Gavin Gibson, plaintiff's acquaintance, to support his claims against the officers and attempt to overcome the officers' assertions of qualified immunity. *Id.* at 3. Brooks's proposed Second Amended Complaint is attached to the operative motion. Dkt. No. 60-1.

The Taylor County defendants do not oppose Brooks's request for leave. Dkt. No. 60 at 2, 11. However, Officers Farmer and Meiser object to the request because they allege that Brooks failed to exercise diligence in constructing his pleading, that he has not provided adequate explanation for his delay in requesting leave, and that allowing him to file an amended pleading would cause them undue prejudice. *See* Dkt. No. 62. Although the Court finds that Brooks's request is significantly delayed and that there is an apparent lack of diligence, the Court concludes that remaining factors do not support denying leave to amend.[10]

### A.   Brooks has failed to explain his undue delay and apparent lack of diligence in investigating and pleading his case.

"One important factor in the district court's decision is the timeliness of the motion to amend." *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982). "Mere passage of time need not result in denial of leave to amend, but delay becomes fatal at some period of time." *Id.* (citation omitted). When there has been a delay, the party seeking amendment "bears the burden of showing that a delay was due to oversight, inadvertence, or excusable neglect." *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 994–95 (5th Cir. 2005) (internal citations and quotation marks omitted); *see also Chitimacha*, 690

---

noncompliance with Local Rule 15.1 because the opposing party had fair opportunity to respond after the proposed amendment was filed one day later).

[10] The officers do not allege that Brooks acted in bad faith or with dilatory motive in filing his motion. Thus, the Court limits its analysis to the remaining factors.

F.2d at 1163 ("When there has been an apparent lack of diligence, the burden shifts to the movant to prove that the delay was due to excusable neglect.").

Courts have found that denial of leave may be appropriate where the movant "kn[ew] or should have known of the facts upon which the proposed amendment is based but fail[ed] to include them in the original complaint." *Villarreal v. Johnson*, No. 2:15-CV-219, 2018 WL 6272046, at *4 (N.D. Tex. Oct. 31, 2018), *report and recommendation adopted*, No. 2:15-CV-219-D, 2018 WL 6267658 (N.D. Tex. Nov. 30, 2018) (quoting *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (noting that the motion to amend "was not based on new evidence unavailable at the time of the original filing" and denying motion on that basis)).

Here, the officers contend that leave should be denied because plaintiff failed to exercise diligence in investigating and constructing his pleadings and has not provided adequate explanation for his delay in filing his request for leave. Dkt. No. 62 at 3–5. Brooks filed his request for leave more than 14 months after filing suit and more than five months after the officers' second motion to dismiss became ripe for review. Thus, there is no question that plaintiff's request was significantly delayed.[11]

There is also an apparent lack of diligence on Brooks's behalf. The relevant declarations were made in May 2021,[12] five months after the officers' second motion to

---

[11] Plaintiff appears to concede in his initial motion for leave that an amendment at this stage would "moot considerable work that has already occurred and that it would delay the resolution of the issues in this case." Dkt. No. 57 at 4.

[12] Plaintiff also seeks to include statements obtained from defendants Noret, Horton, and Olson's discovery responses. *See* Dkt. No. 60 at 7–9. The Court finds that these statements merely support the narrative already contained in the First Amended Complaint. Therefore, the Court focuses its analysis on the proposed new information obtained from Mary Brooks and Gavin Gibson.

17

dismiss was filed. And while the Court recognizes that discovery did not commence until March 2021, it appears as though at least some of the information Brooks seeks to include could have been discovered at a much earlier stage without formal discovery. The relevant information came from two friendly witnesses—one being plaintiff's own mother. So Brooks could have obtained at least some of this information through informal discussions prior to filing suit or filing his First Amended Complaint, and yet he failed to do so. Based on Brooks's delay and apparent lack of diligence, Brooks bears the burden of providing some tenable excuse for failing to timely request leave to amend.

Brooks has failed to meet this burden. Brooks attempts to justify his delay in seeking leave to amend by claiming to have only recently discovered the information through formal discovery in May, which the Court does not doubt. But Brooks does not explain why he could not have discovered this same information through a cursory investigation at an earlier stage.

Brooks's counsel represents that in gathering evidence for the response to the summary-judgment motion, he "learned of two conversations that Plaintiff's Mother, Mary Brooks, had with witnesses in this case"—Randall Farmer and Gavin Gibson. Dkt. No. 60 at 4. Counsel then obtained declarations from Mary Brooks and Gibson regarding what they knew. *Id.* Based on counsel's representation, it is unclear why at least some of the information Brooks seeks to add about Gibson and Officer Farmer's observations and their statements to Mrs. Brooks could not have been obtained through conversations with plaintiff's own mother at a much earlier stage. Mary Brooks is a key witness in this case based on her interactions with multiple defendants. And plaintiff has not indicated that there would have been any difficulty in obtaining information from his mother about her

knowledge of the events. In fact, Brooks included numerous factual allegations representing statements made by or to Mrs. Brooks in both his Original and First Amended Complaint. *See, e.g.*, Dkt. No. 1 ¶¶ 111, 116, 134, 145, 288, 314; Dkt. No. 28 ¶¶ 124, 129–30, 147, 315, 336, 344. Thus, the Court agrees with the officers that at least some of this information could have been discovered at an earlier stage with proper diligence. Thus, the Court finds that Brooks has not adequately explained his delay or apparent lack of diligence and that this factor weighs in favor of denying leave.

### B.    Brooks has not repeatedly failed to cure deficiencies by amendments previous allowed.

The Court finds that there have not been "repeated failures to cure deficiencies by amendments previously allowed" in this case. *Forman*, 371 U.S. at 182. "When considering whether there have been repeated failures to cure deficiencies, courts in this circuit have considered how many previous amendments have been attempted." *Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, No. 12-1979, 2015 WL 4254130, at *4 (E.D. La. July 13, 2015) (collecting cases). "Courts have found that one previous amendment does not amount to a repeated failure to cure deficiencies by amendments previously allowed." *Id.* (citing *Mailing & Shipping Sys., Inc. v. Neopost USA, Inc.*, 292 F.R.D. 369, 377 (W.D. Tex. Mar. 28, 2013); *Vazquez v. AMO Enters., Inc.*, No. 3:12-CV-00029-KC, 2013 WL 593457, at *5 (W.D. Tex. Feb. 14, 2013)). "However, the Fifth Circuit has found that two previous amendments does amount to a repeated failure to cure deficiencies." *Id.* (citing *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002); *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x. 717, 725 (5th Cir. 2008)).

Here, the officers contend that Brooks has "repeatedly failed to state a claim against [the officers] in his pleadings." Dkt. No. 62 at 5. The Court dismissed Brooks's Original

19

Complaint because it found that Brooks failed to plead sufficient factual allegations to support an inference that the second prong of deliberate indifference was met. Dkt. No. 22. Although Brooks did not request leave to amend, the Court afforded him an opportunity to cure the deficiencies and address the officers' assertions of qualified immunity through a Rule 7(a) Reply. *Id.* at 11.

Brooks then filed his First Amended Complaint (Dkt. No. 28) and a corresponding Rule 7(a) Reply (Dkt. No. 29). Neither document sufficiently cured the deficiencies previously identified by the Court or the officers. Instead of amending his complaint to include factual support for his allegations that the officers were subjectively aware of a serious risk or that the risk was so obvious such that the officers' awareness can be inferred, he added more conclusory statements about the same and asked the Court to make multiple inferences not supported by the allegations. Thus, Brooks's First Amended Complaint fails to adequately state a claim for relief against the officers. Moreover, while Brooks's Rule 7(a) Reply provided more legal analysis related to Brooks's claims, it did not further develop the facts in conjunction with the relevant legal authority.

Although the First Amended Complaint and Rule 7(a) Reply did not cure the deficiencies, these filings, which occurred almost simultaneously, more accurately represent one chance to cure deficiencies, rather than two. Because the Court finds that Brooks has not repeatedly failed to cure deficiencies, this factor does not support denying leave.

C.     **The officers will not suffer undue prejudice if the Court grants leave to amend, but denying leave to amend would significantly prejudice Brooks.**

The Fifth Circuit has held that delay alone is insufficient to deny a motion for leave to amend unless the delay is undue because it prejudices the nonmoving party. *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) ("[W]e know that

20

delay alone is an insufficient basis for denial of leave to amend: The delay must be undue, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court."). "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *U.S. CFTC v. Fin. Robotics, Inc.*, 2013 WL 3280038, at *3 (S.D. Tex. June 27, 2013) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006)).

Here, the Court finds that the officers would not suffer undue prejudice if Brooks is granted leave to amend. The officers claim that allowing an amendment at this stage would be prejudicial because it would affect their procedural strategy, potentially subject them to intrusive discovery, and cause them unnecessary stress. Dkt. No. 62 at 6–7. These are all valid concerns; however, they do not constitute undue prejudice. *See Dalton v. C. R. Bard, Inc.*, No. 3:19-CV-2484-D, 2020 WL 4284585, at *2 (N.D. Tex. July 27, 2020) (finding that delays in resolution of the case and the necessity of conducting further discovery do not constitute undue prejudice because these types of delays are often inevitable when a party amends his complaint to add new facts or claims). The officers have had notice of the claims alleged against them since March 2020, and they have yet to be subjected to discovery. Additionally, there are no impending deadlines that would cause difficulty in proceeding with the merits of the litigation at this stage. Thus, while it is unfortunate that the officers will likely incur additional litigation costs based on plaintiff's apparent lack of diligence in this case, the Court finds that the officers would not be unduly prejudiced by having to litigate their claims on the merits at this stage.

In contrast, denying leave to amend would significantly prejudice Brooks, especially in light of the new and substantial factual allegations and evidence. When there are

21

substantial reasons to deny an amendment, the Court may also consider whether "whether undue prejudice to the movant will result from denying leave to amend." *Henderson v. U.S. Fid. & Guar. Co.*, 620 F.2d 530, 534 (5th Cir. 1980) (citation omitted). Here, the Court finds that denying leave to amend would unduly prejudice Brooks because it would deny him of a chance to litigate his case on the merits. This fact weighs heavily with the Court in determining whether leave is appropriate.

### D. Brooks's proposed Second Amended Complaint is not futile.

Lastly, and importantly, the Court finds that Brooks's proposed Second Amended Complaint meets the pleading standard and is therefore not futile. Courts generally afford a claimant an opportunity to amend a complaint "[i]f it appears that a more carefully drafted pleading might state a claim upon which relief could be granted." *Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 608 (N.D. Tex. 2006); *see also Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 693 (E.D. Tex. 2009) (granting leave to amend because "it does not appear that [plaintiff's] . . . claims are patently frivolous or that an amendment could not cure their defects").

A trial court may, however, properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citation omitted). So the court asks whether the proposed complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Here, the Court finds that the proposed Second Amended Complaint has adequately stated claims of relief against the officers, and therefore, the amendment is not futile. First,

22

the Court finds that the proposed amendment includes factual allegations that, if true, could lead to an inference that Officer Farmer was subjectively aware that a substantial risk of serious harm existed. The proposed amendment includes allegations that Officer Farmer called Mrs. Brooks and told her that "Brooks seemed out of it" and that "he initially thought that Brooks needed to be taken to the hospital because something might be wrong" but that the other officer said he was "just drunk and high." Dkt. No. 60-1 ¶¶ 87–91. These new factual allegations, if true, could lead to a plausible inference that Officer Farmer was subjectively aware that Brooks was suffering from a serious risk of medical harm and needed immediate medical attention. Thus, because the proposed amendment would sufficiently state a claim for relief against Officer Farmer, it is not futile as to that defendant.

These allegations, however, do not lead to a plausible inference that Officer Meiser had the same requisite subjective awareness. *See Price v. Valdez*, No. 3:16-CV-3237-D, 2017 WL 3189706, at *7 (N.D. Tex. July 27, 2017) (noting that "knowledge is not to be imputed between coworkers") (citing *Thompson*, 245 F.3d at 458–59)). Thus, the only way the proposed amendment would survive dismissal against Officer Meiser is if it contains factual allegations to show that the risk of serious harm was so obvious such that Officer Meiser's subjective awareness can be inferred from the circumstances.[13]

Brooks claims that the allegations derived from Gibson's declaration show that "it was obvious that [Brooks] had been injured and needed medical attention." Dkt. No. 60 at 6. The following proposed factual allegations describe Gibson's observations of Brooks

---

[13] The officers also claim that the proposed allegations related to Noret, Horton, and Olson's discovery responses do not cause the proposed Second Amended Complaint to state a claim and that therefore those proposed amendments are futile. Dkt. No. 62 at 5. Because these statements add nothing material to Brooks's First Amended Complaint, the Court only analyzes whether the new allegations related to Mary Brooks and Gibson would cure the pleading deficiencies.

between March 4, 2018 and March 5, 2018. Dkt. No. 60-1 ¶¶ 34–55. Per Brooks, Gibson

dropped Brooks off at the hotel on the evening of March 4, and when he left him, Brooks

"was not drunk or impaired in any way" at that time. *Id.* ¶¶ 35–36. When Gibson returned

to the hotel the next morning, roughly a half-hour before Officers Farmer and Meiser

arrived, he found Brooks in a very different state. *Id.* ¶¶ 34–55. The room door was cracked

open, and the room "was a complete disaster, with blankets, sheets, clothes, and other items

on the floor," including Brooks's phone, which was obviously broken. *Id.* ¶¶ 37–41. Gibson

then saw "Brooks lying in the bed with his head covered and his feet hanging off of the

bed." *Id.* ¶ 42. He also saw blood on the blankets and sheets and on a towel on the floor.

*Id.* ¶ 43. When he tried to turn Brooks over, he saw blood on Brooks's cheek and ear, which

he noticed had come from Brooks's ear. *Id.* ¶¶ 43–44. He later told Brooks's mother that he

initially "thought Brooks was dead because of the blood." *Id.* ¶ 47. When Gibson

attempted to wake Brooks, he moaned unintelligibly in response. *Id.* ¶¶ 48–49.

In summary, Brooks alleges that it was obvious when Gibson entered the room that

something had happened and someone had been injured, and it was obvious when he tried

to wake Brooks "that Brooks had been injured and needed medical attention." *Id.* ¶¶ 50–51.

Gibson did not alert the hotel staff or call 911 due to his own "legal issues which could have

caused him to be arrested if the police showed up while he was there." *Id.* ¶ 52. He then left

shortly before the 12:00 p.m. checkout time and assumed the hotel staff would find Brooks

minutes later. *Id.* ¶¶ 53–56. The officers then arrived roughly a half-hour later. *Id.* ¶ 43.

After carefully reviewing the proposed amendment in the light most favorable to

Brooks, the Court finds that Brooks has proposed factual allegations that, if true, support an

inference that both officers should have been aware, because it was so obvious, of

24

substantial risk to Brooks's health. While not conclusive, the new allegations about the circumstances of the room and Brooks's appearance provide more factual support for Brooks's position that it was obvious that he had sustained serious injuries and needed immediate medical care, and that therefore, the officers' subjective awareness can be inferred. Accordingly, the Court finds the proposed amendments contains sufficient facts to overcome a Rule 12(b)(6) dismissal motion and is not futile.

It is frustrating to the Court that these additional factual allegations were not included at an earlier stage. However, Rule 15(a) emphatically states that "leave shall be freely given when justice so requires." Thus, because Brooks would suffer undue prejudice if leave were not granted and given that his amendment is not futile, the Court, in its discretion, has determined that leave to amend is appropriate. Moreover, any prejudice the officers will suffer is outweighed by the justice served by giving Brooks an opportunity to litigate his claims on the merits. Thus, the Court grants Brooks's motion for leave to amend.

**5.  Conclusion**

Although Brooks's allegations are serious and the Court treats them accordingly, the Court finds that his First Amended Complaint does not allege sufficient facts to adequately state claims against Officers Farmer and Meiser for deliberate indifference or bystander liability. Thus, for the reasons stated above, the Court grants Farmer and Meiser's second motion to dismiss (Dkt. Nos. 30–31).

However, because the Court finds that Brooks's Second Amended Complaint is not futile and that denying leave to amend would cause undue prejudice, the Court grants Brooks's motion for leave to amend (Dkt. No. 60). Accordingly, the Clerk of Court is

directed to detach the proposed Second Amended Complaint (Dkt. No. 60-1), and file it
into the official record in this case.

There is a pending motion for summary judgment filed by the remaining defendants
relating to the allegations in the First Amended Complaint. (Dkt. No. 44). The First
Amended Complaint will have no legal effect upon the filing of the Second Amended
Complaint. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (holding that an "amended
complaint supersedes the original complaint and renders it of no legal effect unless the
amended complaint specifically refers to and adopts or incorporates by reference the earlier
pleading."). In cases where there are pending motions related to a superseded complaint,
the Court may deny the motions as moot and allow the movants to file revised motions
relating to the claims in the amended complaint.

Here, however, the Second Amended Complaint appears to be identical to the First
Amended Complaint except for the new allegations in Paragraphs 33–91, which are factual
allegations related to Officers Farmer and Meiser. Thus, the amendments in the Second
Amended Complaint should not affect the pending summary-judgment motion or the
responses to those motions, which relate primarily to the issue of whether any of the
remaining defendants are entitled to qualified immunity and other issues independent of the
new allegations. Additionally, the substance of the new allegations is contained in
declarations attached to Brooks's response to the summary-judgment motion. Therefore,
the remaining defendants had an opportunity to address the new allegations in their reply
brief. And notably, those defendants did not oppose Brooks's request for leave. As a result,
the Court is granting leave to amend on the condition that the pending motion for summary

judgment and brief (Dkt. Nos. 44–45) remain in effect, and the Court will treat those filings as being directed at the allegations in the Second Amended Complaint.

Officers Farmer and Meiser must file an answer no later than 14 days after the Second Amended Complaint is filed. The remaining defendants—other than Officers Farmer and Meiser—may amend their answer to respond to the new allegations and modify paragraph numbers to correspond with the numbered paragraphs of Brooks's Second Amended Complaint. However, to the extent that the defendants' new responses contradict any prior judicial admissions, those amendments shall not supersede and replace defendants' original answer, which shall be restated in the new pleading.

So ordered on July 19, 2021.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

27